## Shultz v. Haffelfinger Wall Paper Company.

*Workmen's compensation law—Injury during noon hour—Injury in fire on premises—Negligence of claimant—Evidence—Sufficiency.*

1. The fact that the deceased workman had left the premises of his employer, the defendant company, because of a fire which broke out therein, during his noon hour, and afterwards returned to get property belonging to him, does not take him out of the course of his employment. He was on the premises where he was required by the nature of his employment to be, and his death was due to the condition of the premises at the time. Evidence of such facts is sufficient to support a finding by the referee that the employee was required by the nature of his employment to be on the employer's premises. The question of his negligence in returning to the burning premises is immaterial. Compensation is payable to the dependents of an employee killed under such circumstances.

*Workmen's compensation law — Injuries received while not actually engaged in the business or affairs of the employer—Workmen's Compensation Act of 1915, sect. 301.*

2. To make an injury compensable, where the employee is not actually engaged in the business or affairs of his employers, three requirements must be met: (1) The injury must have occurred "upon the premises occupied by, or under the control of, the employer, or upon which the employer's business or affairs are being carried on." (2) The employee's presence on the premises must have been demanded by the nature of the employment. (3) The injury must have been caused either (a) by the condition of the premises, or (b) by the operation of the employer's business or affairs thereon.

Appeal from decision of the Workmen's Compensation Board. C. P. Dauphin Co., Jan. T., 1921, No. 171.

*Beidleman & Hull,* for plaintiff; *George Ross Hull,* for defendant.

HARGEST, P. J., Oct. 25, 1921.—This is an appeal taken to this court by agreement from an award made by the referee and affirmed by the Workmen's Compensation Board.

### Facts.

The facts found by the referee and affirmed by the board show that the claimant's deceased husband, an employee of the defendant company, was

1 D. & C.

accustomed to carry his lunch to work and eat it on the premises of the company. On the day of his death he worked until 12 o'clock noon, when the whistle blew for lunch. He then went to the boiler-room to eat his lunch, and about 12.20 a fire broke out in the company's plant, which interrupted his lunch. He left the plant, and about five or ten minutes after the fire started was seen by Carbaugh, a fellow-employee, standing by a box-car near the plant, on the property of the Pennsylvania Railroad adjoining the plant. Shultz, the deceased, asked Carbaugh if he had his clothes out of the fire, to which Carbaugh replied, "No, my clothes are all in but what I have on," and then Shultz said that he had a coat hanging in the cellar which had a check for $300 in it and $26 in money, and wanted to know if there was any possible way to get down and get his coat. Carbaugh told him there would be but one way to go down, and that would be by the stairway, but he would not like to risk it; that he had tried to get his clothes, but could not find them for smoke. Shultz was not seen alive afterwards, and four days later a body mutilated beyond identification was found.

The referee's fourth finding of fact is, in part, as follows: "That at the time, although not being actually engaged in the furtherance of the business and affairs of the employer, he was injured upon the premises occupied and under the control of the defendant, and that the deceased's presence thereon was required by the nature of his employment."

Among the referee's conclusions of law are the following:

"2. That the claimant's deceased husband having died as the result of injuries sustained in an accident while in the course of his employment with the defendant company, and the claimant, his widow, being dependent upon him for support at the time of his death, she is entitled to recover compensation as provided in section 307 of the Workmen's Compensation Act of 1915, and an additional sum of $100 for burial expenses.

"3. The fact that the deceased had left the premises of the defendant company when the fire first broke out, and afterwards returned to get some property belonging to him, does not take him out of the course of his employment with the defendant company, but, at the most, could only be regarded as a negligent act on his part in encouraging a dangerous situation and subjecting himself to the risk of losing his life. He was on the premises where he was required to be by the nature of his employment, and his death was due to the condition of the premises at the time."

*Discussion.*

The appellant contends that there is no evidence to support the finding of fact that the deceased's presence on the premises was required by the nature of his employment, and the conclusion of law that the defendant is liable because the deceased died as the result of injuries sustained while in the course of his employment.

In Landy v. The Am. Inter. Ship Building Corp., 6 Dept. Reps. 1076, it is said with reference to section 301 of the Workmen's Compensation Act of June 2, 1915, P. L. 736: "It has been held that three requirements must be met to make the injury compensable in the case where the employee is not actually engaged in the business or affairs of his employer. First, the injury must have occurred 'upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on.' Second, the employee's presence on the premises must have been demanded by the nature of the employment. Third, the injury must have been caused either *(a)* by the condition of the premises or *(b)* by the opera-

tion of the employer's business or affairs thereon." See, also, Getty v. William Henderson & Co., 2 Dept. Reps. 2450.

In this case there can be no doubt that the injury was caused by "the condition of the premises" which were occupied by the employer. The question is whether there is evidence to justify the finding that "the employee was required by the nature of his employment to be present on the premises." Such a finding is one of fact and will not be reviewed: Gallagher v. Walton Manuf. Co., 264 Pa. 29; Ferri v. Lenni Quarry Co., 266 Pa. 264. This is the vital point in this case, and the limit of the court's inquiry is to ascertain (1) whether or not there is evidence to sustain the finding, and (2) if there is evidence to sustain the finding, whether the law has been properly applied thereto: Strohl v. East. Pennsylvania Rys. Co., 270 Pa. 132. If such evidence appears, the province of the court ends and the finding becomes one of fact not subject to review, even "though the referee and the board might well have decided the .point differently, and the court would possibly have done so:" Stahl v. Watson Coal Co., 268 Pa. 452.

Our inquiry in this case, therefore, is whether there is evidence to sustain the finding that the deceased's presence on the premises was required by the nature of his employment. At the moment of the accident he was not actually engaged in the furtherance of his employer's business, but it is well settled that his employment was not interrupted by eating his lunch.

In Granville v. Scranton Coal Co., 76 Pa. Superior Ct. 335, the deceased was injured during the lunch hour. He had been standing at a window and was found on the floor below, caught in the machinery. The principles in cases of this kind are so well pointed out by Judge Keller that we repeat them here:

"The learned judge of the court below was apparently of the opinion that an injury is not compensable under the Workmen's Compensation Act unless it had some direct causal connection with the particular work the employee was engaged to do; in other words, unless the injury arose out of, or was due to, the workman's individual employment; and as Granville's work at the spiral picker and chutes did not require his presence at or near the pony rolls, that his injury was not compensable. The Supreme Court and this court have pointed out a number of times that our Workmen's Compensation Act differs from those of most other states, in that the injury to be compensable does not have to arise out of the employment; that it need only occur in the course of it: Dzikowska v. Superior Steel Co., 259 Pa. 578; Lane v. Horn & Hardart Baking Co., 261 Pa. 329; Hale v. Savage Fire Brick Co., 75 Pa. Superior Ct. 454; that the course of employment is not broken by short intervals of time taken for the noonday meal, where the employee remains on the employer's premises (unless he is doing something wholly foreign to his employment), and that in such circumstances he is still engaged in the furtherance of the business or affairs of the employer: Dzikowska v. Superior Steel Co., 259 Pa. 578; Hale v. Savage Fire Brick Co., 75 Pa. Superior Ct. 454. 'Acts of ministration by a servant to himself, . . . performance of which while at work are reasonably necessary to his health and comfort, are incidents to his employment and acts of service therein within the Workmen's Compensation Act, though they are only indirectly conducive to the purpose of the employment. Consequently, no break in the employment is caused by the mere fact that the workman is ministering to his personal comforts or necessities, as by warming himself, or seeking shelter, or by leaving his work to relieve nature, or to procure drink, refreshments, food or fresh air, or to rest in the shade:' Blouss v. D., L. & W. R. R. Co., 73 Pa. Superior Ct. 95.

1 D. & C.

"Thus, while Granville was on his employer's premises during the half hour period allowed for refreshment and rest, he was still in the course of his employment, and his employer would be liable under the Compensation Act for an accident happening to him during that period, unless he was doing something wholly foreign to his employment, and merely going from one floor to another of the building or breaker in which he worked would not be doing something wholly foreign to his employment.

"If the accident happened during the course of his employment, compensation is not withheld because the employee does something besides or apart from the thing which he was employed to do, provided it is not wholly foreign to his employment. . . . If the accident happens during the course of his employment—and that includes during the lunch or rest period spent on the employer's premises—compensation must be paid, unless it appears from the evidence that he was at the time of injury doing something wholly foreign to his employment. . . .

"The Workmen's Compensation Act is not a mere variant from master and servant negligence law; negligence and contributory negligence have nothing to do with it. 'Its purpose is to relieve to some extent the employee who has been injured in the course of his employment from the economic consequences of his injury and make them a part of the cost of operation of the business, to be paid ultimately by the consuming public, and it should be so construed as to carry this purpose into effect:' Hale v. Savage Fire Brick Co., 75 Pa. Superior Ct. 454."

In Flucker v. Carnegie Steel Co., 263 Pa. 113, the deceased had left the property of his employer and gone to his home and stayed there until some time between 10 and 11 o'clock, when he started back to his place of work. After leaving home to return to work, he was not seen again until his dead body was found in the ravine on the premises of the employer. The referee found that "the deceased met his death from injuries received by accident occurring in the course of his employment." The Workmen's Compensation Board sustained the referee, but the Common Pleas of Allegheny County reversed, deciding that the record presented no sufficient support for the referee's conclusion that the deceased met death while in the course of his employment. Upon appeal, the Supreme Court reversed the Common Pleas and sustained the order allowing compensation.

In Blouss v. D., L. & W. R. R. Co., 73 Pa. Superior Ct. 95, the claimant was injured while riding upon the defendant company's engine in going for his dinner-pail. The Workmen's Compensation Board reversed the finding of the referee and denied compensation. Upon appeal, the Common Pleas sustained the Workmen's Compensation Board, but the Superior Court reversed, saying (page 98): "Certainly a man going after his dinner-pail at the noon hour, preparatory to eating his dinner, is as much in the course of his employment as a man going to his home at the completion of an errand: Haddock v. Steel Co., 263 Pa. 120; Messer v. Manufacturers' L. & H. Co., 263 Pa. 5; or one going after tools to a part of the mine he had been forbidden to enter: Gurski v. Coal Co., 262 Pa. 1. The fact that he chose for his own convenience to ride instead of walk, in going after his dinner, would not deprive him of compensation if he was injured on the way."

In Haller v. City of Lansing (Mich.), 162 N. W. Repr. 335, a workman was grading a place for a stone crusher, and at the noon hour, for the purpose of eating his meal protected from the cold, he went into a tool-house sixty or seventy feet from the place being graded, and an explosion of gasoline occurred

when he lit his pipe. It was held that he was within the course of his employment.

From the foregoing authorities it is settled that an employee is in the course of his employment while resting during the lunch period. Does the fact that Shultz left the premises of the employer because of the fire require us to say that there is no evidence from which the referee could find that the accident happened during the course of the employment? We do not think his temporarily leaving the property of the employer had that effect. If he had remained on the property of the employer, even though in a different part of the building, and the fire had broken out with the same fatal result to him, under the authorities above cited the accident would unquestionably have been a compensable one. When the fire broke out, instead of going to another part of the building, he left the premises and went on the property of the Pennsylvania Railroad close by. It is argued that this case is differentiated from the cases cited, because there was not a temporary suspension during the lunch period, but an enforced permanent suspension of the work, caused by the fire,' of which the deceased had full knowledge. With this contention we cannot agree. There is nothing in the evidence to show the extent of the fire at the time the deceased went back into the building. It was only five or ten minutes after the fire started, and the only direct evidence as to the extent of the fire is that of the witness Carbaugh, who says that Shultz asked him whether there would be any possible way for him to go down into the cellar for his coat, and that he replied that there "would be just one way to do it, and that is to go by that stairway," but that Carbaugh said he would not like to risk it, as he had tried to get his property, but could not find it for smoke. This evidence does not show that at that time the fire had so progressed as to show that it was beyond control and that the employment had permanently been suspended. It is also argued that Shultz went back in defiance of instructions, but the evidence does not sustain this contention. The witness Carbaugh says, "the foreman, Mr. Miller, gave me orders to try to see whether everybody was out of the fire," and at another place he says: "Then you know the foreman gave me orders to try to see whether these parties were out; so I was on the look for them fellows, so I did not—I moved on, you know." There is nothing in the evidence to show that the instructions which the foreman gave him were communicated to Shultz, and, therefore, no inference could be drawn that Shultz was forbidden by his employer, or any one in authority over him, to return to the premises. We, therefore, think that there is no evidence to require a finding that the employment was permanently interrupted by the fire at the time Shultz returned for his coat, and, on the other hand, that there is evidence to justify the finding that his presence on the premises was required by the nature of his employment, which had not been interrupted at the time of his return. Shultz was, perhaps, guilty of negligence, but the question of negligence has no place in our determination: Granville v. Scranton Coal Co., 76 Pa. Superior Ct. 335; Hale v. Savage Fire Brick Co., 75 Pa. Superior Ct. 454; Dzikowska v. Superior Steel Co., 259 Pa. 578.

We do not think this case comes within the rule laid down in Kuca v. Lehigh Valley Coal Co., 268 Pa. 163, where it is held that "no compensation will be allowed where the deceased left his regular working place and went some distance away, where no duty or business called him, and then met his death;" nor within the case of Strohl v. East. Pennsylvania Rys. Co., 270 Pa. 132, where the question was whether the claimant was, at the time of his injury, engaged in the business of the defendant or another company by whom he

1 D. & C.

was also employed; nor within the case of Burrows *v.* Susquehanna Coal Co., 4 Dept. Reps. 623, where the claimant during the noon hour, in company with other breaker-boys of his own age, were joy-riding on a truck belonging to the defendant.

For the reasons heretofore given, we are of opinion that there was sufficient evidence to justify the findings of the referee, and that the law has been properly applied to those findings.

The award of the referee, affirmed by the Workmen's Compensation Board, is hereby affirmed, at the cost of the appellant.

From William Jenkins Wilcox, Harrisburg, Pa.